FILED
2014 Nov-25  PM 03:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **DAVID EUGENE LOWERY,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No.: 7:14-cv-00622-JEO** |
| ) | |
| **NATIONAL BELT SERVICE WEST,** ) | |
| **INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This case is before the court on Defendants Actuant Corporation and Northco Corporation's motion for summary judgment. (Doc. 14). The motion has been fully briefed (docs. 18 and 19). The parties have consented to the full jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). (Doc. 36). For the reasons stated more fully below, the court finds that Defendants' motion for summary judgment is due to be granted.

## I.    BACKGROUND

On August 15, 2011, Plaintiff was working as a belt installer on the evening shift at the facility formerly known as Jim Walter Resources, #4 Mine. (Doc. 1-1 at ¶5). Plaintiff alleges that as he was jacking up the belt line roller to achieve the supervisor-directed height of 8 feet, the boom drive on the belt assembly, specifically, the boom drive jacks, malfunctioned, causing the boom drive to fall on Plaintiff. (*Id.*) The Mine Safety and Health Administration (MSHA) was called to investigate the accident. Plaintiff was aware of the investigation; however, no one from MSHA contacted or interviewed him about the accident. (Doc. 18-1 at 2).

After the accident, Plaintiff hired attorney Frank Cauthen, Jr. to assist him with his

worker's compensation claim.  (Doc. 18-1 at 3).  A final Worker's Compensation Settlement

Order was entered on August 2, 2012, and a Satisfaction of Judgment was filed by Plaintiff on

the same day.  (Doc. 1-6 at 5-7).  To the best of Plaintiff's knowledge, Mr. Cauthen did not

pursue any other claims against any other parties on his behalf.  Further, during the course of his

worker's compensation claim, Plaintiff did not discuss the MSHA investigation or any issue

concerning who manufactured the belt system that was involved in his accident with Mr.

Cauthen.  (Doc. 18-1 at 3).

On August 14, 2013, Plaintiff hired attorney James King to pursue the claims presented in

this case.  (Doc. 18-1 at 1, Doc. 18-2 at 1).  At that time, Plaintiff told Mr. King that he believed

that National Belt Service was the manufacturer and/or supplier of the belt system/boom drive

that caused his injuries.  (Doc. 18-1 at 1).  This was based on his understanding that all of the belt

systems used in the No. 4 Mine were manufactured or supplied by either National Belt or

Continental Conveyor.  (Doc. 18-1 at 1-2).   Plaintiff further states that, in his experience,

National Belt Systems are manufactured with red rollers and frames and that other belt systems,

such as those made by Continental Conveyor, are either grayish, yellow, or orange.  (*Id.* at 2).  To

the best of his recollection at the time, Plaintiff recalled that the belt system that caused his

injuries was red and that National Belt's name was identified on the plate attached to the side of

the belt assembly.  (*Id.* at 1-2).

The day that he was retained, Mr. King sent letters to National Belt Service and Plaintiff's

employer, Jim Walter Resources.  (Doc. 18-2 at 2-4).  In his letter to National Belt Service, Mr.

King informed the company of Plaintiff's claim that its belt system had caused his injuries.  (*Id.*

at 2).  In his letter to Jim Walter Resources, Mr. King stated that he would need its "help in

identifying the exact product regarding this complaint" and specifically asked that it provide him with information properly identifying the product(s) involved in the accident.  Mr. King further asked that Jim Walter Resources provide him with Plaintiff's personnel file and any and all investigations and accident reports generated or obtained by Jim Walter Resources.[1]  (*Id.* at 4).

That same day, August 14, 2013, Plaintiff filed his initial Complaint in the Circuit Court of Tuscaloosa County, Alabama. (Doc. 1-1).  That initial Complaint named National Belt Service Inc. as Defendant along with 10 Fictitious Defendants.  (*Id.*)  The Complaint alleges the following three claims against all Defendants: (1) Negligence/Wantonness, (2) Alabama Extended Manufacturers Liability Doctrine (AEMLD), and (3) Failure to Warn.  (Doc. 1-1).

On October 28, 2013, counsel for National Belt Service filed a Freedom of Information Act request with MSHA seeking all documents related to Plaintiff's accident.  (Doc. 14-1 at 2).  In response, MSHA provided counsel with 75 pages of documents.  National Belt Service's counsel in turn provided these documents to Plaintiff's attorney, Mr. King, on December 5, 2013.  (Doc. 18-2 at 2).  During his review of these documents, Mr. King noticed for the first time that National Belt may not have been the manufacturer of the belt system at issue in this case and that Northco may have been the manufacturer/supplier of the overall belt system and that the screwjack component may have been a Simplex brand jack.  (*Id.* at 2-3).  Mr. King met with Plaintiff on December 13, 2013, to see if he could verify the above information.  When Plaintiff was unable to do so, Mr. King had an associate investigate the issue further.  (*Id*. at 3).  Mr. King's office was closed from December 23, 2013, through January 8, 2014.  On January 16, 2014, Mr. King's associate reported to him that the manufacturer of the Simplex Jack appeared

---

[1] These documents were not provided until after the case was removed to this court.  (Doc. 18-2 at 4 n.4).

to be Actuant and that Northco was the likely manufacturer of the overall belt system. (*Id.*)

On February 19, 2014, Plaintiff filed a Substitution of Defendants in the state court. (Doc. 1-2).  That pleading formally substituted Defendants Actuant and Northco for Fictitious Defendants 2-9. (*Id.*)  On March 3, 2014, Defendant Veyance Industrial Services, Inc., d/b/a National Belt Service was dismissed without prejudice after the parties filed a joint stipulation of dismissal requesting the same.  (Doc. 1-4).  Defendants Actuant and Northco were served on March 17, 2014, and they timely removed the case to this court on April 4, 2014.  (Docs. 1, 1-5). On August 21, 2014, Defendants moved for summary judgment on the grounds that Plaintiff's claims against them are barred by the applicable two year statute of limitations. (Doc. 14).

## II.     STANDARD OF REVIEW

Pursuant to Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE, party is authorized to move for summary judgment on all or part of a claim or defense asserted either by or against the movant.  Under that rule, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is

4

genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A), (B).  Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  In its review of the evidence, a court must credit the evidence of the non-movant and draw all justifiable inferences in the non-movant's favor.  *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000).  At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III.    DISCUSSION

The sole issue before the court is whether Plaintiff's claims against Actuant and Northco are barred by the relevant statute of limitations.  In diversity cases, such as the case at bar, the relevant statute of limitations is governed by state law.  *Anderson v. Papillion*, 445 F.2d 841, 842 (5th Cir.1971) (stating that "a federal court in a diversity case [is prohibited] from giving a cause of action a longer life than it would have had in the state court").[2]  In Alabama, the applicable statute of limitations for all of Plaintiff's claims is two years.  ALA. CODE. § 6-2-38.  Here, Plaintiff's initial Complaint was filed on August 14, 2013, and the statute of limitations on

---

[2] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Plaintiff's claims expired the next day, on August 15, 2015.  (Doc. 1-1).  However, Actuant and Northco were not substituted for Fictitious Defendants 2-9 until February 19, 2014, more than 6 months after the expiration of the statute of limitations. Thus, Plaintiff's claims against Actuant and Northco are time barred, unless the date of the substitution relates back to the date of the filing of the original Complaint.

ALABAMA RULE OF CIVIL PROCEDURE 9(h) allows for fictitious party practice.[3] Specifically, it states:

> When a party is ignorant of the name of an opposing party and so alleges in the party's pleading, the opposing party may be designated by any name, and when that party's true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.

ALA. R. CIV. P. 9(h).  "Under Rule 15(c)(4), ALA. R. CIV. P., such an amendment 'relates back to the date of the original pleading when ... relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h).'" *Ex parte Gen. Motors of Canada Ltd.*, 144 So. 3d 236, 239 (Ala. 2013), reh'g denied (Nov. 22, 2013).[4]

Taken together, these rules "allow a plaintiff to avoid the bar of a statute of limitations by fictitiously naming defendants for which actual parties can later be substituted." *Jones v. Resorcon, Inc.*, 604 So. 2d 370, 372-73 (Ala. 1992).  The Alabama Supreme Court "has stated on

---

[3] The court is not convinced that fictitious party practice is appropriate in cases, such as this, where a plaintiff is mistaken as to the proper party and attempts to use fictitious party practice to remedy the error.  *Hood v. Liberty Insurance Corporation*, No. 12-0271-CG-M, 2013 WL 3894958 (S.D. Ala. July 29, 2013); *Davidson v. Pogue*, 735 So. 2d 1240, 1243 (Ala. Civ. App. 1999)(quoting *Roth v. Scruggs*, 106 So. 182 (Ala. 1925), in which the Alabama Supreme Court said the following about fictitious party practice: "We are clear that it does not apply to a case where the plaintiff, by mistake, sues the wrong party, brings him into court, and finding he has the wrong party, seeks to substitute another and different party....  When the wrong person is sued, he is due to go out of court, and the new party is entitled to have the suit date from the time he is sued.")).

[4] "Rule 15(c)(1) allows federal courts sitting in diversity to apply relation-back rules of state law where, as here, state law provides the statute of limitations for the action."  *Saxton v. ACF Indus., Inc.*, 254 F.3d 959, 963 (11th Cir. 2001).

6

numerous occasions that in order to invoke the relation-back principles of Rule 9(h) ... the plaintiff must establish (1) that the plaintiff was ignorant of the identity of the fictitiously named party, in the sense of having no knowledge at the time the complaint was filed that the party subsequently named was in fact the party intended to be sued, *Columbia Engineering International, Ltd. v. Espey,* 429 So. 2d 955 (Ala. 1983); and (2) that the plaintiff used due diligence to discover the defendant's true identity *before filing* the original complaint, *Fulmer v. Clark Equipment Co.*, 654 So. 2d 45 (Ala. 1995)." *Ex parte Bowman*, 986 So. 2d 1152, 1156 (Ala. 2007) (emphasis added).  Put another way, a "plaintiff is ignorant of the identity of a fictitiously named defendant when, after exercising due diligence to ascertain the identity of the party intended to be sued, he lacks knowledge *at the time of the filing of the complaint* of facts indicating to him that the substituted party was the party intended to be sued." *Ex parte FMC Corp.*, 599 So. 2d 592, 593 (Ala. 1992) (emphasis added).[5]

The central question in this case is whether Plaintiff was diligent in attempting to discover the identity of Actuant and Northco *prior to* the filing of the lawsuit.[6]  The court finds

---

[5] To be clear, exercising due diligence prior to filing suit is not the only requirement that must be met before an amendment substituting a named defendant for a fictitious one will relate back.  *Patterson v. Consol. Aluminum Corp.*, 101 So. 3d 743, 747 (Ala. 2012) ("[I]n order for the relation-back doctrine to apply and justify the substitution of a defendant for a fictitiously named party after the limitations period has run, the plaintiff seeking such substitution must establish: (1) that it stated a cause of action against the defendant in the body of the original complaint, albeit identifying the party only as a fictitiously named party; (2) that it was ignorant of the defendant's identity at the time the original complaint was filed; (3) that it exercised due diligence to identify the fictitiously named party; and (4) that it promptly amended its complaint once it knew the identity of the fictitiously named party. The absence of evidence establishing any one of these factors is sufficient to support a trial court's judgment disallowing the outside-the-limitations-period substitution.") (internal citation omitted); *Ex parte Hensel Phelps Const. Co.*, 7 So. 3d 999, 1003 (Ala. 2008) ("[I]t is incumbent upon the plaintiff to exercise due diligence to determine the true identity of defendants both before and after filing the original complaint.").  However, because the court finds that Plaintiff was not diligent in attempting to identify the unknown defendant prior to filing suit, the undersigned need not address the remaining requirements.

[6] Plaintiff has submitted an affidavit documenting Plaintiff's Counsel's efforts beginning on the same date that the lawsuit was filed.  However, that does not address the question of what efforts were undertaken to discover the identity of Defendants *prior to* the filing of the lawsuit.

that he was not.[7]  It is undisputed that well within the two year statute of limitations Plaintiff

knew which machine had caused his injuries, knew where that machine was located, knew who

had control of the machine, and knew that MSHA had been called to investigate the accident.

(Doc. 18-1).  There is also no question that Plaintiff's employer, Jim Walter Resources, knew

who had manufactured the belt system and its parts as evidenced by the MSHA report detailing

that information.  (Docs. 14-1, 14-2, and 14-3).  However, Plaintiff did not contact Jim Walter

Resources to ask to inspect the belt system in question, or even to simply ask what company had

made the machine.[8]  In fact, there is no evidence of any attempt by Plaintiff to discover

Defendants' identities prior to filing suit.  While Plaintiff was not required to exercise

extraordinary diligence to determine Defendants' identities, *see Ex parte Nail*, 111 So. 3d 125,

131 (Ala. 2012), he was still required to exercise ordinary diligence.  Ordinary diligence requires

that Plaintiff at least undertake some effort to determine the identities of Defendants prior to

filing suit.  *Ex parte Gen. Motors of Canada Ltd.*, 144 So. 3d 236 (Ala. 2013) (amendment

substituting fictitious party filed two months after the statute of limitations ran did not relate back

because Plaintiff was not diligent in identifying the defendant prior to filing suit when he had a

source of information that would have provided him with the defendant's identity, specifically,

the identification label on the relevant car, even though said car was not in Plaintiff's

---

[7] The court recognizes that Plaintiff did not retain Plaintiff's counsel until the day before the statute of limitations ran.  Nevertheless, that does not excuse Plaintiff from acting diligently to determine the proper defendants prior to filing suit.  Plaintiff had two years to engage counsel on this claim and chose to wait until the day before the statute of limitations ran to do so.

[8] Plaintiff contends that his worker's compensation attorney advised him not communicate with Jim Walter Resources or its employees "while [his] claim was pending."  (Doc. 18-1).  Even so, a final Worker's Compensation Settlement Order was entered on August 2, 2012 (doc. 1-6 at 5-7), over a year before the statute of limitations expired.

8

possession); *Crowl v. Kayo Oil Co.*, 848 So. 2d 930 (Ala. 2002) (finding plaintiff was not diligent where "the record [was] devoid of any evidence of any effort whatsoever on [the plaintiff's] part to learn the names of the fictitiously named defendants, although that information could have been obtained from public records or simply by going to the service station where he was injured and asking the manager who owned or leased the property. It appears from the record and from the evidence that [the plaintiff] did nothing other than rely on the fact that Conoco owned and operated the gasoline service station because Conoco brand gasoline was sold there"); *Fulmer v. Clark Equipment Co.*, 654 So. 2d 45 (Ala. 1995) (holding that the plaintiff did not exercise due diligence when he did not do anything calculated to pursue a cause of action until after the statute of limitations expired especially in light of the fact that defendant's name was clearly listed on the nameplate of the offending machine); and *Jones v. Resorcon*, 604 So. 2d 370, 373 (Ala. 1992) (finding that the plaintiff was not diligent in identifying the fictitious defendant because "an inspection of the [offending machinery] would almost certainly be necessary to maintain the product liability action against any defendant" even though plaintiff did not have control over the offending machinery and owner of said machinery had threatened to deny access).  In light of Plaintiff's failure to conduct any investigation into the identity of the fictitious defendants prior to filing suit, the court finds he was not diligent.[9]  *Bowen v. Cummings*, 517 So. 2d 617, 618 (Ala. 1987) ("Rule 9(h) was not meant to allow a party to sit back for almost two years and make only one attempt at learning the defendant's name, and then, failing, simply to list fictitious defendants. This would work a substantial injustice to the

---

[9] This is especially true with respect to Defendant Actuant.  The photos submitted of the belt assembly in question clearly have at least one part that is labeled with the Simplex name (doc. 14-3 at 12).  *Jones v. Resorcon*, 604 So. 2d 370 (Ala. 1992).

defendant and would violate the purpose behind our discovery statutes and our statutes of limitations.").  As such, the claims against Actuant and Northco do not relate back to the date of the filing of the original Complaint and are thus barred by the statute of limitations.

**VI.     CONCLUSION**

In accordance with the foregoing, the court finds that Defendants' Motion for Summary Judgment (doc. 14) is due to be granted and that this case is due to be dismissed with prejudice. A separate Order will be entered.

**DATED**, this the 25th day of November, 2014.

_____

**JOHN E. OTT**
Chief United States Magistrate Judge